# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| NESTLE USA, INC.,<br><br>           Plaintiff,<br><br>  vs.<br><br>ULTRA DISTRIBUCIONES MUNDIALES S.A. DE C.V. AND ULTRA INTERNATIONAL DISTRIBUTORS, INC.,<br><br>           Defendants. | Civil Action No.: 5:20-cv-000384<br><br>**COMPLAINT FOR:**<br><br>**(1)  TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1)**<br><br>**(2)  FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**<br><br>**(3)  TRADEMARK DILUTION, 15 U.S.C. § 1125(c)**<br><br>**(4)  UNLAWFUL IMPORTATION OF GOODS INFRINGING U.S. TRADEMARKS OR NAMES, 15 U.S.C. § 1124 AND 19 U.S.C. § 1526**<br><br>**(5)  TRADEMARK DILUTION, TEX. BUS. & COM. CODE ANN. § 16.103**<br><br>**(6)  UNFAIR COMPETITION BY MISAPPROPRIATION**<br><br>**(7)  TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS**<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiff Nestlé USA, Inc., by its attorneys, brings this complaint against defendants Ultra Distribuciones Mundiales, S.A. de C.V. ("Ultra Mundiales") and Ultra International Distributors, Inc. ("Ultra International", together with Ultra Mundiales, "Ultra") as follows:

## NATURE OF ACTION

1.     This action arises from Ultra's unauthorized importation, distribution and sale of Nestlé food and beverage products in the United States that were intended for sale only in Mexico.

2.      Plaintiff Nestlé USA, Inc. ("NUSA" or "Plaintiff") sells Nestlé food and beverage products throughout the United States.  NUSA's corporate affiliate, Société des Produits Nestlé S.A. ("SPN"), is the owner of Nestlé's trademarks in the United States, and NUSA is the exclusive licensee of those trademarks and all of their associated rights.  Accordingly, NUSA is responsible for the marketing, labelling, and distribution of Nestlé products in the United States.

3.      NUSA takes that responsibility seriously by ensuring that the contents, packaging, and labelling of Nestlé products sold in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers.  These activities have ensured continued goodwill for Nestlé trademarks in the United States, which in turn allows NUSA to profit from the sale of Nestlé products to U.S. consumers.  Ultra is a consummate "free rider," unfairly profiting off of the value of Nestlé's trademarks and the investment that NUSA and its authorized distributors have made in creating consumer demand for Nestlé products.

4.      Ultra Mundiales is a Mexico-based global distributor of Mexican products, including products manufactured by Nestlé Mexico that are intended for sale only in Mexico.  Ultra International is a Texas-based subsidiary of Ultra Mundiales that imports and sells Mexican products in the United States, including Nestlé Mexico products that it obtains from its parent company Ultra Mundiales.  Ultra Mundiales ships Nestlé Mexico products by truck through Tijuana, Mexico to Ultra International for distribution in the United States.  However, Ultra is not an owner or licensee of Nestlé trademarks in the United States, and NUSA has not authorized Ultra to sell Nestlé-trademarked products.  Trademarked products in a market that are imported and sold in this manner without consent of the trademark owner are often referred to as "parallel imports" or "grey market goods."

5.     NUSA often sells its own version of the Nestlé Mexico products using the same Nestlé trademarks.  Despite being sold under the same brands, using the same Nestlé trademarks, and having similar appearances, the Nestlé Mexico products sold by Ultra are materially different from their corresponding NUSA Products.  While these differences may not matter to Ultra, they can have serious repercussions for NUSA, retailers, and consumers.

6.     Customers and consumers purchase the grey market products sold by Ultra without realizing that they are not authorized by NUSA for resale in the United States, are not properly labeled in compliance with the Food, Drug, and Cosmetic Act and the Food & Drug Administration's ("FDA") regulations and guidance, may contain formulations not intended for the United States market, and/or are not subject to NUSA's rigorous quality control standards for post-sale services.  As a result of Ultra's actions and the resulting consumer confusion, NUSA and its authorized distributors in the United States have lost retail customers. Ultra's actions have harmed NUSA, its business partners, and its customers.

7.     Accordingly, NUSA brings this action to recover damages due to Ultra's unlawful distribution and sale of contraband food and beverage products, and to prevent Ultra's further distribution and sale of such products.  NUSA seeks this relief through claims under the federal Lanham Act and Tariff Act, claims under Texas' Business and Commerce Code, and claims for unfair competition by misappropriation and tortious interference with existing and prospective business relationships with legitimate distributors under Texas common law.

## THE PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff NUSA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1812 N. Moore Street in Arlington,

Virginia.  NUSA is the exclusive licensee for Nestlé products in the United States, where it is responsible for the marketing and distribution of those products.

9.      Defendant Ultra Mundiales is a corporation organized and existing under the laws of Mexico, with its principal place of business located at Av. Hidalgo No. 1312 Pte. Centro, Torreón, Coahuila 27000.  Ultra Mundiales describes itself as a worldwide supplier of Mexican products, including Nestlé grey market goods that it imports and distributes in the United States through its subsidiary Ultra International and other U.S. distributors.

10.     This Court has personal jurisdiction over Ultra Mundiales because Ultra Mundiales regularly transacts business in this judicial district, and because a substantial portion of the acts and omissions by Ultra International giving rise to NUSA's claims and the damages and injuries complained of occurred in this judicial district. Ultra Mundiales imports the accused goods to this jurisdiction, where they are resold to distributors including its subsidiary Ultra International, which is induced to engage in illegal conduct by further distributing Nestlé grey market goods.

11.     Defendant Ultra International is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 10205 Oasis Drive, Suite 320 in San Antonio, Texas.  Ultra International is a subsidiary of Ultra Mundiales, and a U.S. distributor of Mexican products, including Nestlé grey market goods obtained from its parent Ultra Mundiales and elsewhere.

12.     This Court has personal jurisdiction over Ultra International because Ultra International's principal place of business is located in this judicial district, it regularly transacts business in this judicial district, and because a substantial portion of the acts and omissions by Ultra International giving rise to NUSA's claims and the damages and injuries complained of occurred in this judicial district.

4

13.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and general principles of ancillary and pendent jurisdiction, as well as under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

14.     Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTUAL ALLEGATIONS

*NUSA and NUSA Products*

15.     As a major multinational company—indeed, the largest food and beverage company in the world—Nestlé has operating subsidiaries in many different countries.  In North America, those operating subsidiaries include (among others) NUSA and Nestlé México, S.A. de C.V. ("Nestlé Mexico").  NUSA and Nestlé Mexico are responsible for the marketing, distribution, and sale of Nestlé products in the United States and Mexico, respectively.  NUSA sells hundreds of Nestlé food and beverage products (the "NUSA Products") in the United States.

16.     NUSA devotes a substantial amount of effort and resources to ensure that NUSA Products are based on the preferences of United States consumers, are safe to consumers, and comply with U.S. laws and regulations.  Before the NUSA Products' distribution and sale, NUSA ensures that the NUSA Products are properly manufactured, packaged, and labeled to their intended specifications/formulations, and NUSA conducts quality control checks of the NUSA Products.  After the NUSA Products are distributed, NUSA continues to monitor the market by receiving consumer inquiries, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues, including by conducting recalls or initiating legal proceedings.

17.     NUSA's sale of the NUSA Products in the United States has been tremendously successful because of its efforts to ensure the high quality of those NUSA Products, as well as its substantial investment in the marketing and promotion of the NUSA Products.

*Trademarks for the NUSA Products*

18.     Each of the NUSA Products is marketed under a brand name that is subject to a trademark registered at the U.S. Patent and Trademark Office ("USPTO").  The owner of each trademark is SPN, which has entered into an agreement with NUSA granting NUSA an exclusive license to the rights associated with each trademark in the United States, including the right to enforce the trademark in the United States.

19.     The trademarks owned by SPN and registered with the USPTO (the "Nestlé Marks") that are relevant here include:

(a)     Nestlé.  Since at least 1878, NUSA or its predecessor in interest has continuously used the trademark "Nestlé" on a variety of NUSA Products.  The "Nestlé" mark has been registered at the USPTO under various registration numbers, including 0188089, 0380007, 1105743, 1521476, 1534496, 1622720, 2089943, 2081154, 2121177, 2221586, 3343565, 3716317, 3598791, 4962410, and 4855611.

(b)     Nescafé.  Since at least 1939, NUSA or its predecessor in interest has continuously used the trademark "Nescafé" on a variety of NUSA Products.  The "Nescafé" mark has been registered at the USPTO under various registration numbers, including 0379117, 0843369, 1152592, 2951916, and 4879308.

(c)     Nido.  Since at least 1941, NUSA or its predecessor in interest has continuously used the trademark "Nido" on a variety of NUSA Products.  The "Nido" mark has been registered at the USPTO under various registration numbers, including 0394221 and 4826708.

(d)     Good Food, Good Life.  Since at least 2011, NUSA or its predecessor in interest has continuously used the trademark "Good Food, Good Life" on a variety of

6

NUSA Products.  The "Good Food, Good Life" mark has been registered at the USPTO under various registration numbers, including 4270568 and 4270564.

(e)     <u>Abuelita.</u>  Since at least 1998, NUSA or its predecessor in interest has continuously used the trademark "Abuelita" on a variety of NUSA Products.  The "Abuelita" mark has been registered at the USPTO under various registration numbers, including 4969102 and 4111185.

(f)     <u>Carnation.</u>  Since at least 1899, NUSA or its predecessor in interest has continuously used the trademark "Carnation" on a variety of NUSA Products.  The "Carnation" mark has been registered at the USPTO under various registration numbers, including 0054383, 0112252, 0113006, 0319935, 0184498, 0183986, 0889131, and 1086567.

(g)     <u>La Lechera.</u>  Since at least 1988, NUSA or its predecessor in interest has continuously used the trademark "La Lechera" on a variety of NUSA Products.  The "La Lechera" mark has been registered at the USPTO under various registration numbers, including 1557025, 4314364, and 5186726.

20.     The Nestlé Marks are famous, and the goodwill associated with them are of enormous value to NUSA, and are associated with high-quality food and beverage NUSA Products.  Nescafé, for example, is ranked thirty-sixth and Nestlé is ranked fifty-ninth on Interbrand's 2017 list of Best Global Brands.[1]  Similarly, according to Brand Finance's Global 500 2017 report, the Nestlé brand ranked as the sixty-first most valuable brand globally, with a

---

[1] Interbrand, "Best Global Brands 2017 Rankings," available at http://interbrand.com/best-brands/best-global-brands/2017/ranking/.  "Interbrand is a global brand consultancy, and publisher of the highly influential annual Best Global Brands."  *See* Interbrand, "About," available at: http://interbrand.com/about/.

brand value of more than $19 billion.[2]  The Nestlé Marks became famous long before Ultra commenced its illegal and infringing activities that NUSA complains of herein.

***Ultra's Wrongful Distribution and Sale of Nestlé Mexico Products in the United States***

21.    Ultra describes itself as being a "100% Mexican owned company" that is "committed to serve World Wide customers that are continuously looking to acquire Mexican products."[3]

22.    Among the food and beverages that Ultra sells are products manufactured by Nestlé Mexico.

23.    Neither NUSA nor SPN have authorized Ultra to distribute or sell Nestlé products in the United States.  NUSA and SPN also have not authorized Ultra to use the Nestlé Marks in the United States in any manner.

24.    Nevertheless, Ultra is in the business of acquiring products manufactured by Nestlé Mexico (the "Nestlé Mexico Products") and distributing and selling them to retailers and other customers in the United States.

25.    The Nestlé Mexico Products that Ultra sells include, among others:

- Nescafé coffee products, such as Nescafé Clásico and Nescafé Estilo Café de Olla;

- Nido powdered drink formulas, including Nido Kinder 1-3 ãnos;

- Chocolate drink products, such as Nestlé Abuelita; and

- Milk and cream products, such as Nestlé Carnation Clavel, Nestlé La Lechera La Original, and Nestlé Media Crema.

---

[2] Brand Finance, "Global 500 2017," February 2017, available at http://brandfinance.com/images/upload/global_500_2017_locked_website.pdf.
[3] *See* ultradm.com.mx/en/.

26.     Ultra regularly markets and provides customers in the United States with advertisements that use the Nestlé Marks to advertise Nestlé Mexico Products.  For example, in an advertisement (attached in Exhibit A) for the ASD Market Week tradeshow previously scheduled to take place in Las Vegas, Nevada, between March 22-25, 2020, Ultra advertises grey market Nescafé Clasico, as is readily apparent from the Spanish language and metric weight on the front of the label.  The advertisement uses the Nestlé Mark "Nescafé" with its accompanying images. The advertisement further indicates that grey market Nescafé Clasico would be offered for sale by Ultra at the ASD Market Week tradeshow.

27.     The Nestlé Mexico Products distributed by Ultra in the United States, as explained further below, are materially different from the corresponding NUSA Products marketed under the same brand.  For instance, they use Spanish-only labels with nutritional information and metric units that are inconsistent with FDA regulations; they have in some instances different formulations that are also inconsistent with FDA regulations; and they are subject to different quality control standards and post-sale services.

***Material Differences Between NUSA Products and Nestlé Mexico Products Sold by Ultra***

28.     For each of the Nestlé Mexico Products sold by Ultra, there is a similar but materially different NUSA Product that is actually intended for sale in the United States.  The Nestlé Mexico Products sold by Ultra use many of the same Nestlé Marks that appear on these NUSA Products.  For example:

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nescafé Clásico  | Nescafé Clásico  |
| Nido Kinder 1+  | Nestlé Kinder 1-3 años  |
| Nestlé Abuelita  | Nestlé Abuelita  |

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé Carnation | Nestlé Carnation Clavel |
|  |  |
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |
| Nestlé Media Crema Table  Cream | Nestlé Media Crema |
|  |  |

29.     Despite their use of the same Nestlé Marks and similarities in appearance, there are material differences between the NUSA Products and the Nestlé Mexico Products concerning, among other things, the information contained on the labels, product composition/formulation, and post-sale services for the products.

Labels

30.     The Nestlé Mexico Products sold by Ultra are labeled in Spanish while the NUSA Products are labeled in English.  For example:

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé Abuelita | Nestlé Abuelita |
|  |  |



| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé Carnation | Nestlé Carnation Clavel |
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |

31.     This Spanish-language-only labelling of the Nestlé Mexico Products is a violation of FDA regulations that require products sold in the United States to be labeled in English and allow labeling in a foreign language such as Spanish only when all required label elements are provided in both English and Spanish.  *See* 21 CFR 101.15(c)(2).

32.     Many of the labels for the Nestlé Mexico Products refer to a website affiliated with Nestlé Mexico, recetasnestle.com.mx, whereas the corresponding labels for the NUSA Products refer to websites affiliated with NUSA, such as cocinandoconnestle.com and lalechera.com.

Likewise, many of the labels for the Nestlé Mexico Products provide a customer service line affiliated with Nestlé Mexico, whereas the corresponding labels for the NUSA Products provide a customer service line affiliated with NUSA.  For example:

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |



The websites and customer service line identified on labels of the Nestlé Mexico Products will not allow U.S. consumers to contact the firm responsible for the Products in the event of a safety or quality concern.

33.     The Nutrition Facts Panel on the label for the NUSA Products complies with FDA regulations, which specify certain formatting for font sizes, bolding, spacing, and lines between text, as well as naming and order of nutrients listed. See 21 CFR 101.9(c), (d).  The NUSA Products

also comply with FDA regulations by providing serving sizes in appropriate units.  See 21 CFR 101.9(b).  Further, consistent with new FDA nutrition labeling regulations that went into effect on January 1, 2020, the NUSA Products' labels identify the added sugar content of the products and list calories in a designated larger font.

34.     However, the nutrition labels for the Nestlé Mexico Products are different in appearance and content from the Nutrition Facts Panels on the labels for the NUSA Products. Many of the Nestlé Mexico Products' nutritional information lacks the font sizes, bolding, spacing, lines between texts, and naming and order of nutrients mandated by FDA regulations, and/or do not provide serving sizes in the units required by FDA regulations.  Further, none of the Nestlé Mexico Products identify their added sugar content or list calories in a designated larger font.  In addition, many of the Nestlé Mexico Products provide different nutritional information than the NUSA Products because they may have different formulations and/or recommended serving sizes.

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé Abuelita | Nestlé Abuelita |



35.     The labels for the NUSA Products identify the quantity of the NUSA Products in both U.S. Customary and metric units as required by FDA regulations.  In contrast, the labels for the Nestlé Mexico Products sold by Ultra use only metric units.  For example:

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé Carnation | Nestlé Carnation Clavel |
|  | |

Product Composition and Formulation

36.     The product compositions and formulations of the NUSA Products and Nestlé Mexico Products may also differ.  For example, the NUSA and Nestlé Mexico versions of La Lechera have different fat and sugar content:

|  | Content Per Serving | |
|---|---|---|
|  | NUSA | Nestlé Mexico |
| Fat Content | 3.5g | 2g |
| Sugar Content | 22g | 23.6g |

37.     Likewise, the NUSA and Nestlé Mexico versions of Nestlé Media Crema have different fat and sugar content:

|  | Content Per Serving | |
|---|---|---|
|  | NUSA | Nestlé Mexico |
| Fat content | 4g | 3g |
| Sugar content | 0g | .6g |

Other Material Differences

38.     Beyond differences in their labelling and formulations, there are a number of additional material differences between the NUSA Products and the Nestlé Mexico Products.

39.     For example, before NUSA Products are distributed and sold in the United States, they are subject to food safety and quality assurance processes to ensure they meet the requirements of U.S. laws and regulations.  Products that Nestlé Mexico manufactures for distribution in Mexico must conform to Mexico's food safety and quality standards.  In addition, in the event of a quality issue or a product recall involving these Mexican manufactured products, it may be difficult to trace the products and their ingredients to determine the source of the issue.

40.     NUSA also offers a number of post-sale services for the NUSA Products, including returns, spoils allowances, "scan-backs," customer service, and in-store demonstrations.  These services result in a different experience for retailers and consumers of NUSA Products compared to retailers and consumers of grey market Nestlé Mexico Products distributed by Ultra:

(a)     Returns: NUSA allows returns of certain NUSA Products if retailers and/or customers are dissatisfied with those NUSA Products.  However, because NUSA never distributed the Nestlé Mexico Products diverted by Ultra, retailers and customers who purchased those products will not be able to return them to NUSA, potentially damaging the customer perception of NUSA and the Nestlé Marks.

(b)     Spoils Allowances and "Scan-Backs": NUSA provides certain credits to retailers for NUSA Products that have been spoiled or damaged, and for NUSA Products that have been sold at a discounted price.  These credits help prevent retailers from losing money on products that are damaged or spoiled, or that remain unsold.  They also encourage retailers to remove spoiled and/or damaged products from their shelves, and to offer lower prices for NUSA Products.  However, NUSA cannot provide credits for Nestlé

Mexico Products because NUSA did not provide those Nestlé Mexico Products to retailers in the first instance.

(c)   <u>Customer Service</u>: Retailers and consumers who have purchased NUSA Products may contact NUSA's customer service staff in the United States to address any concerns that they have about their NUSA Products, and NUSA's customer service staff can address those concerns.   However, NUSA's customer service staff cannot address concerns that retailers and consumers raise about Nestlé Mexico Products that they have purchased, as NUSA had no involvement in the Nestlé Mexico Products' manufacture, labelling, distribution, or sale.

(d)   <u>In-Store Demonstrations</u>: When a retailer sells NUSA Products, NUSA provides certain in-store demonstrations of the NUSA Products for retailers and consumers, thereby better informing them about how to properly use the NUSA Products and encouraging further sales at those locations.   However, NUSA does not provide in-store demonstrations for the Nestlé Mexico Products distributed by Ultra.   This deprives consumers of information about their purchases and dampens consumer demand.

41.     By providing these post-sale services for the NUSA Products, NUSA builds goodwill for itself, the NUSA Products, and the Nestlé Marks in the United States.   However, U.S. purchasers of Nestlé Mexico Products do not enjoy those services, thereby diminishing the goodwill of the Nestlé Marks.

***Ultra's Use of Stickers on Certain Nestlé Mexico Products***

42.     In some instances, Ultra has distributed and/or sold Nestlé Mexico Products that include unauthorized stickers on top of the original product labels.

43.     For example, the Nestlé Media Crema La Original products being sold through retailers for whom Ultra is a distributor include stickers on both the front and the back side of the

product.  This is obvious when comparing the product being distributed through Ultra to an image of the original Nestlé Mexico Product:

| Original Appearance | Appearance with Sticker |
| --- | --- |



| Sticker Applied to Back of Nestlé Media Crema La Original |
| --- |

44.     The stickers that appear on this product provide some nutritional and ingredients information intended to create the impression that retailers and/or consumers are purchasing a NUSA Product and/or that the Nestlé Mexico Product complies with U.S. labeling requirements

and other regulations.  However, the stickers are insufficient to bring the Nestlé Mexico Product into compliance with U.S. regulations.  For instance, the product's net weight declaration does not appear on the principal display (front) panel of the product, as required by 21 CFR 101.107.

45.     As another example, Ultra has sold the Nestlé Mexico versions of Nescafé Clásico and Nestlé Carnation with stickers purporting to provide nutritional information that fail to meet FDA requirements.   For instance, under 21 C.F.R. 101.15(c), any product that makes representations in Spanish must include all required labeling elements—including nutritional facts and ingredients information—*both* in English and in Spanish.  This requirement ensures that, when a foreign language is used to attract non-English-speaking consumers, speakers of the foreign language are able to obtain all the information the FDA deems necessary to make educated food purchasing decisions.  Ultra has violated this requirement by selling products with English-language-only nutrition labels covering the Spanish-language nutrition labels.

46.     The stickered Nescafé Clásico and Nestlé Carnation products sold by Ultra also fail to comply with the FDA's regulations because their net weight declaration does not appear on the principal display (front) panel of the product, and their "Nutrition Facts" panels do not meet the necessary format and content requirements, such as appropriate hairline thickness or placement between lines of text (*see* 21 CFR 101.9(d)); font sizes, bolding, naming (*e.g.*, kcal and lipids), and order of certain nutrients do not comply with FDA regulations (*see* 21 CFR 101.9(c)); and/or serving sizes that are not appropriately calculated in common household units (*see* 21 CFR 101.9(b)).

47.     By selling products with stickers that fail to comply with the FDA's labeling requirements, Ultra undermines the FDA's efforts to ensure that consumers make informed food choices, to facilitate price comparisons, and to prevent fraud upon consumers.  Ultra's failure to

comply with federal regulations also undermines goodwill for NUSA, its products, and the Nestlé Marks throughout the United States.

### Effects of Ultra's Wrongful Conduct on NUSA and Its Customers

48.     Retailers and consumers have purchased Nestlé Mexico Products distributed by Ultra under the mistaken belief that those products are NUSA Products, and/or that the distribution and sale of those products is associated with NUSA.  As a result, those retailers and consumers have purchased materially different products from the ones they believed they were purchasing— products that lack the required label statements, product formulation, quality control, food safety compliance, and post-sale services that they were expecting. This consumer confusion and resulting damage to NUSA and the goodwill associated with the Nestlé Marks is likely to continue if Ultra's infringing activities are not stopped. This has harmed and continues to harm NUSA's goodwill and reputation, and the goodwill associated with the Nestlé Marks in the United States, resulting in enormous harm and damages to NUSA.

49.     Further, by circumventing legitimate distribution channels and quality control procedures, and by failing to provide the services that NUSA and its legitimate distributors provide to retailers and customers, in many instances Ultra has been able to offer artificially low prices for the Nestlé Mexico Products.  As a result, some retailers and consumers have purchased Nestlé Mexico Products imported by Ultra, rather than NUSA Products intended for distribution and sale in the United States, resulting in substantial losses to NUSA and its authorized distributors and disruptions to NUSA's business relationships with its customers.  This confusion among retailers and consumers and resulting damage to NUSA and the goodwill associated with the Nestlé Marks is likely to continue if Ultra's infringing activities are not stopped.

50.     Ultra has engaged in this unlawful conduct despite knowing that it is infringing upon NUSA's rights to the Nestlé Marks in the United States.

## **FIRST CAUSE OF ACTION**

**Trademark Infringement, 15 U.S.C. § 1114(1)**

**Against All Defendants**

51.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 50 above as if fully set forth herein.

52.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

53.     In the United States, NUSA or its predecessors have used the Nestlé Marks continuously for decades—and in some cases, more than a century—to identify their goods and distinguish them from those made and sold by others by, among other things, prominently displaying the Nestlé Marks on the NUSA Products and their packaging and marketing materials.

54.     Defendants have infringed NUSA's rights to the Nestlé Marks in interstate commerce by various acts, including advertising, distributing, and offering for sale goods bearing the Nestlé Marks which were manufactured solely for the Mexican market, and were not manufactured by NUSA for sale in the United States under the Nestlé Marks.

55.     Defendants' acts of infringement are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendants' products, or that Defendants are associated with or related to NUSA or are authorized by NUSA to distribute or sell the NUSA Products in the United States.

56.     Defendants' acts of infringement have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted Nestlé

Mexico Products.  Defendants' acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

57.     Defendants had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendants' adoption and use of the Nestlé Marks, and Defendants continue to use the Nestlé Marks with actual knowledge of infringing conduct.

58.     NUSA has not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

59.     By reason of Defendants' wrongful acts of infringement, NUSA has suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

60.     Further, by reason of Defendants' wrongful acts of infringement, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

61.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, gain and business opportunities as a result of their acts of infringement.

62.     By reason of the foregoing, NUSA is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Nestlé Mexico Products to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, treble damages, disgorgement of Defendants' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## SECOND CAUSE OF ACTION

### False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)

### Against All Defendants

63.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 62 above as if fully set forth herein.

64.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

65.     Defendants have, without authorization, imported, distributed, and sold in the United States unauthorized or diverted products featuring the Nestlé Marks, which are products that are materially different from the NUSA Products authorized for U.S. sale by NUSA.

66.     Defendants' acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with NUSA, and as to the origin, sponsorship, and/or approval of Defendants' goods, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendants' products, or that Defendants are associated with or related to NUSA or are authorized by NUSA to distribute or sell the NUSA Products in the United States.

67.     Defendants' acts of false designation of origin and unfair competition have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted Nestlé Mexico Products.  Defendants' acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

68.     Defendants had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendants' adoption and use of the Nestlé Marks, and Defendants continue to use the Nestlé Marks with actual knowledge of infringing conduct.

69.     NUSA has not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

70.     By reason of Defendants' wrongful acts of unfair competition, NUSA has suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

71.     Further, by reason of Defendants' wrongful acts of unfair competition, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

72.     If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of unfair competition.

73.     By reason of the foregoing, NUSA is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Nestlé Mexico Products to be destroyed pursuant to 15 U.S.C. § 1118, and to actual damages, treble damages, disgorgement of Defendants' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

**THIRD CAUSE OF ACTION**

**Trademark Dilution, 15 U.S.C. § 1125(c)**

**Against All Defendants**

74.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 73 above as if fully set forth herein.

75.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

76.     The Nestlé Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

77.     The Nestlé Marks are widely recognized by the general consuming public of the United States as a designation of source of NUSA's goods, including the NUSA Products.

78.     The Nestlé Marks became famous source indicators for the NUSA Products long before Defendants commenced their infringing activities.

79.     Defendants' acts have diluted the Nestlé Marks in the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets.  In addition, Defendants' distribution and sale of goods intended for the Mexican market (which may have different formulations, label information, and/or post-sale services than consumers expect) in the United States and Defendants' placement of unauthorized stickers in a manner that defaces the Nestlé Marks and fails to comply with relevant regulations have diluted the Nestlé Marks by tarnishment.

80.     Defendants had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendants' adoption and use of the Nestlé Marks, and Defendants continue to use the Nestlé Marks with actual knowledge of infringing conduct.

81.     NUSA has not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

82.     Defendants' acts have irreparably damaged NUSA and will continue to do so unless restrained by this Court.  Therefore, NUSA is without an adequate remedy at law and is entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products in the United States.

## FOURTH CAUSE OF ACTION

### Unlawful Importation of Goods Infringing U.S. Trademarks or Names,

### 15 U.S.C. § 1124 and 19 U.S.C. § 1526

### Against All Defendants

83.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 82 above as if fully set forth herein.

84.     In the United States, NUSA is the exclusive licensee of the Nestlé Marks, which are registered with the USPTO.  Defendants imported the Nestlé Mexico Products, which bear the Nestlé Marks, into the United States without the permission of NUSA.

85.     By reason of Defendants' wrongful importing of the Nestlé Mexico Products that are materially different from products authorized for sale in the United States under the Nestlé Marks, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

86.     By reason of the foregoing, NUSA is entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products in the United States, and/or seizure of the Nestlé Mexico Products and/or requiring the

Defendants to destroy the Nestlé Mexico Products in their possession, as well as actual damages, treble damages, disgorgement of Defendants' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## FIFTH CAUSE OF ACTION

### Trademark Dilution Tex. Bus. & Com. Code Ann. § 16.103

### Against All Defendants

87.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 86 above as if fully set forth herein.

88.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

89.     The Nestlé Marks are famous and distinctive within the meaning of Texas Business and Commerce Code § 16.103.

90.     The Nestlé Marks are widely recognized by the general consuming public of Texas as a designation of source of NUSA's goods, including the NUSA Products.

91.     The Nestlé Marks became famous source indicators for the NUSA Products long before Defendants commenced their infringing activities.

92.     NUSA has not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

93.     Defendants' acts have diluted the Nestlé Marks in Texas and the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets.  Defendants' acts have further diluted the Nestlé

Marks in Texas and the United States by tarnishing them, given the material differences between the NUSA Products and the Nestlé Mexico Products.

94.     Defendants' acts have irreparably damaged NUSA and will continue to do so unless restrained by this Court.  Therefore, NUSA is without an adequate remedy at law and is entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products.

## SIXTH CAUSE OF ACTION

### Unfair Competition by Misappropriation

### Against All Defendants

95.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 94 above as if fully set forth herein.

96.     NUSA has devoted a substantial amount of effort and resources to develop its products, ensure that NUSA Products are of the highest quality and based on the preferences of United States consumers, are safe to consumers, and comply with U.S. laws and regulations.

97.     Ultra is a "free rider," unfairly profiting off of the value of Nestlé's trademarks and the investment that NUSA and its authorized distributors have made in creating consumer demand for Nestlé products.

98.     Defendant has circumvented legitimate distribution channels and quality control procedures, and failed to provide the services that NUSA and its legitimate distributors provide to retailers and customers. As a result, Ultra has been able to offer artificially low prices for the Nestlé Mexico Products.

99.     Some retailers and consumers have therefore purchased Nestlé Mexico Products imported by Ultra, rather than NUSA Products intended for distribution and sale in the United States, resulting in substantial losses to NUSA and its authorized distributors

100.    As a result of the Defendants' wrongful conduct, NUSA is entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products and restoring to NUSA funds that were wrongfully collected by Defendants.

## SEVENTH CAUSE OF ACTION

### Tortious Interference with Existing and Prospective Business Relations

### Against All Defendants

101.    NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 100 above as if fully set forth herein.

102.    NUSA had existing economic relationships with each of its existing and prospective customers.  Each of those relationships benefited NUSA economically and likely would have continued to benefit NUSA economically in the future.

103.    The Defendants were aware of NUSA's economic relationships with its existing and prospective customers by virtue of their direct contact with those existing and prospective customers, as well as their familiarity with the business of distributing and selling food and beverage products in the United States.

104.    The Defendants intentionally interfered with those economic relationships, and/or knew that the disruption of such relationships was certain or substantially certain to occur, when they wrongfully and unlawfully used the Nestlé Marks, and distributed and sold Nestlé Mexico Products in the United States without the permission of NUSA.  NUSA's relationships with its customers were disrupted, resulting in harm to NUSA, and Defendants' conduct was a substantial factor in causing that harm.

105.    As a result of Defendants' tortious interference with NUSA's business relations, NUSA is entitled to, among other relief, damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NUSA prays for judgment against the Defendants as follows:

(1)     Preliminary and permanent injunctive relief against the Defendants and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them, from doing any of the following acts, either directly or indirectly:

       (a)     Acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the Nestlé Marks;

       (b)     Using any of the Nestlé Marks or any other trademark owned by SPN and/or licensed to NUSA in connection with their business;

       (c)     Otherwise infringing the Nestlé Marks or any other trademark owned by SPN and/or licensed to NUSA;

       (d)     Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the NUSA Products or any other products manufactured, distributed, or sold by NUSA and/or that bears the Nestlé Marks;

       (e)     Using any false designation of origin or false representation concerning the NUSA Products or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks; and

       (f)     Any acts of unfair competition or unfair practice affecting NUSA, the NUSA Products, or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks;

(2)     For an order directing the Defendants, and each of them, to file with this Court and serve on NUSA within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(3)     For an order to destroy the Nestlé Mexico Products or any other products bearing the Nestlé Marks in the possession of the Defendants and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

(4)     For an order seizing the Nestlé Mexico Products or any other products bearing the Nestlé Marks in the possession of the Defendants and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

(5)     For an accounting and disgorgement of all of Defendants' profits resulting from its sale of the Nestlé Mexico Products and any other products bearing a Nestlé Mark in the United States;

(6)     For an order awarding NUSA damages in an amount to be determined, as well as treble damages, prejudgment and postjudgment interest on its damages award, punitive damages, and NUSA's reasonable attorneys' fees and costs of suit;

(7)     Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff NUSA demands a trial by jury of all issues so triable.


Dated:  March 25, 2020                              MAYER BROWN LLP


By: */s/ Charles Kelley*
      Charles Kelley
      Texas Bar No. 11199580
      MAYER BROWN LLP
      700 Louisiana Street, Suite 3400
      Houston, Texas 77002
      Telephone: (713) 238-2634
      Mobile (281) 300-5455
      Fax: (713) 238-4634
      Email: ckelley@mayerbrown.com

      Adam Hudes (*Pro Hac Vice* to be filed)
      District of Columbia Bar No. 495188
      MAYER BROWN LLP
      1999 K Street, N.W.
      Washington, D.C. 20006
      Telephone: (202) 263-3000
      Fax: (202) 263-3300
      Email: ahudes@mayerbrown.com

      Dale Giali (*Pro Hac Vice* to be filed)
      California State Bar No. 150382
      MAYER BROWN LLP
      350 South Grand Avenue
      Los Angeles, California 90071
      Telephone: (213) 229-9500
      Fax: (213) 625-0248
      Email: dgiali@mayerbrown.com


      Attorneys for Plaintiff Nestlé USA, Inc.