## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| NESTLE USA, INC. AND SOCIÉTÉ DES PRODUITS NESTLÉ S.A.,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>ULTRA DISTRIBUCIONES MUNDIALES S.A. DE C.V. AND ULTRA INTERNATIONAL DISTRIBUTORS, INC.,<br><br>               Defendants. | Civil Action No.: 5:20-cv-000384<br><br>**COMPLAINT FOR:**<br><br>**(1)  TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1)**<br><br>**(2)  FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**<br><br>**(3)  TRADEMARK DILUTION, 15 U.S.C. § 1125(c)**<br><br>**(4)  UNLAWFUL IMPORTATION OF GOODS INFRINGING U.S. TRADEMARKS OR NAMES, 15 U.S.C. § 1124 AND 19 U.S.C. § 1526**<br><br>**(5)  TRADEMARK DILUTION, TEX. BUS. & COM. CODE ANN. § 16.103**<br><br>**(6)  TRADEMARK DILUTION, CAL. BUS. PROF. CODE § 14247**<br><br>**(7)  UNFAIR COMPETITION, CAL. BUS. PROF. CODE §§ 17200 ET SEQ.**<br><br>**(8)  UNFAIR COMPETITION BY MISAPPROPRIATION**<br><br>**(9)  COMMON LAW UNFAIR COMPETITION**<br><br>**(10) TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONS**<br><br>**JURY TRIAL REQUESTED** |

## FIRST AMENDED COMPLAINT

Plaintiffs Nestlé USA, Inc. and Société des Produits Nestlé S.A. (together with Nestlé USA, Inc., "Plaintiffs"), by their attorneys, bring this complaint against defendants Ultra Distribuciones Mundiales, S.A. de C.V. ("Ultra Mundiales") and Ultra International Distributors,

Inc. ("Ultra International", together with Ultra Mundiales, "Ultra") as follows:

## NATURE OF ACTION

1.      This action arises from Ultra Mundiales' and Ultra International's unauthorized importation, distribution and sale of Nestlé food and beverage products in the United States that were intended for sale only in Mexico.

2.      Plaintiff Nestlé USA, Inc. ("NUSA") sells Nestlé food and beverage products throughout the United States.  NUSA's corporate affiliate, Plaintiff Société des Produits Nestlé S.A. ("SPN"), is the owner of Nestlé's trademarks in the United States, and NUSA is the exclusive licensee of those trademarks and all of their associated rights.  Accordingly, NUSA is responsible for the marketing, labelling, and distribution of Nestlé food and beverage products in the United States.

3.      NUSA takes that responsibility seriously by ensuring that the contents, packaging, and labelling of Nestlé products sold in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers.  These activities have ensured continued goodwill for Nestlé trademarks in the United States, which in turn allows NUSA to profit from the sale of Nestlé products to U.S. consumers.  Ultra is a consummate "free rider," unfairly profiting off of the value of Nestlé's trademarks and the investment that NUSA and its authorized distributors have made in creating consumer demand for Nestlé products.

4.      Ultra Mundiales is a Mexico-based global distributor of Mexican products, including products manufactured by Nestlé Mexico that are intended for sale only in Mexico.  Ultra International is a Texas-based subsidiary of Ultra Mundiales that imports and sells Mexican products in Texas, California and elsewhere in the United States, including Nestlé Mexico products

that Ultra Mundiales provides for Ultra International to sell in those locations.  However, neither Ultra Mundiales nor Ultra International is an owner or licensee of Nestlé trademarks in the United States, and neither NUSA nor SPN has authorized Ultra Mundiales or Ultra International to sell Nestlé-trademarked products that are intended for sale in Mexico to US consumers.  Trademarked products that are imported and sold in this manner without consent of the trademark owner are often referred to as "parallel imports" or "grey market goods."

5.      NUSA often sells its own version of the Nestlé Mexico products to US consumers using the same Nestlé trademarks.  However, customers and consumers purchase the grey market products sold by Ultra International and Ultra Mundiales without realizing that they are not authorized by NUSA or SPN for resale in the United States.  Despite being sold under the same brands, using the same Nestlé trademarks, and having similar appearances, the Nestlé Mexico products sold by Ultra International and Ultra Mundiales are materially different from their corresponding NUSA Products.

6.      While these differences may not matter to Ultra International and Ultra Mundiales, they can have serious repercussions for NUSA, NUSA's authorized distributors, retailers, and consumers.  The grey market products that Ultra International sells (and Ultra Mundiales directs for sale) in the United States are not properly labeled in compliance with the Food, Drug, and Cosmetic Act and the Food & Drug Administration's ("FDA") regulations and guidance.  For instance, these grey market products often have Spanish-only labels that contain different nutritional information than the NUSA version of those products.  Moreover, the grey market products  may contain formulations not intended for the United States market, and/or are not subject to NUSA's rigorous quality control standards for post-sale services.  As a result of Ultra International's and Ultra Mundiales' actions and the resulting consumer confusion, NUSA and its

authorized distributors in the United States have lost retail customers. Ultra International's and Ultra Mundiales' actions have harmed NUSA, its business partners, and its customers.

7.     Accordingly, NUSA and SPN bring this action to recover damages due to Ultra International and Ultra Mundiales' unlawful distribution and sale of contraband food and beverage products, and to prevent their further distribution and sale of such products.  Plaintiffs seek this relief through claims under the federal Lanham Act and Tariff Act, claims under Texas' Business and Commerce Code, claims under California's Business and Professional Code, and claims for unfair competition and tortious interference with existing business relationships with legitimate distributors under Texas common law.

## THE PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff NUSA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1812 N. Moore Street in Arlington, Virginia.  NUSA is the exclusive licensee for Nestlé products in the United States, where it is responsible for the marketing and distribution of those products.

9.     Plaintiff SPN is a corporation organized and existing under the laws of Switzerland, with its principal place of business located at Entre-deux-Villes, 1800 Vevey Switzerland.  SPN is the owner of Nestlé's trademarks in the United States.

10.     Defendant Ultra Mundiales is a corporation organized and existing under the laws of Mexico, with its principal place of business located at Av. Hidalgo No. 1312 Pte. Centro, Torreón, Coahuila 27000.  Ultra Mundiales describes itself as being "committed to serve World Wide customers that are continuously looking to acquire Mexican products,"[1] and as an exporter of food products that are currently being distributed in the North American market, including

---

[1] *See* ultradm.com.mx/en/.

Texas, Arizona, and California.[2]  The Mexican products that Ultra Mundiales sells include Nestlé grey market goods, which it sends to its subsidiary Ultra International and other U.S. Distributors for distribution in the United States.

11.    This Court has personal jurisdiction over Ultra Mundiales because Ultra Mundiales regularly directs its business at this judicial district through longstanding and established distribution channels, and because a substantial portion of the acts and omissions by Ultra Mundiales giving rise to NUSA's claims and the injuries complained of occurred in this judicial district.  Ultra Mundiales regularly sells the accused Nestlé grey market goods to its subsidiary Ultra International, which in turn resells the Nestlé grey market goods in Texas, California and other states.  These sales by Ultra International in this jurisdiction and elsewhere take place with the full awareness, expectation and direction of Ultra Mundiales.

12.    Defendant Ultra International is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 10205 Oasis Drive, Suite 320 in San Antonio, Texas.  Ultra International is a subsidiary of Ultra Mundiales, and a U.S. distributor of Mexican products, including Nestlé grey market goods obtained from its parent Ultra Mundiales.

13.    This Court has personal jurisdiction over Ultra International because Ultra International's principal place of business is located in this judicial district, it regularly transacts business in this judicial district, and because a substantial portion of the acts and omissions by Ultra International giving rise to NUSA's claims and the damages and injuries complained of occurred in this judicial district.

---

[2] *See* https://ng.linkedin.com/company/ultra-distribuciones-mundiales-s.a.-de-c.v. (Ultra Mundiales' food products are "actualmente distribuyéndose en la Región Lagunera además del mercado norteamericano con presencia en Texas, Arizona y California").

14.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and general principles of ancillary and pendent jurisdiction, as well as under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

15.     Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTUAL ALLEGATIONS

### *NUSA and NUSA Products*

16.     As a major multinational company—indeed, the largest food and beverage company in the world—Nestlé has operating subsidiaries in many different countries.  In North America, those operating subsidiaries include (among others) NUSA and Nestlé México, S.A. de C.V. ("Nestlé Mexico").  NUSA and Nestlé Mexico are responsible for the marketing, distribution, and sale of Nestlé products in the United States and Mexico, respectively.  NUSA sells hundreds of Nestlé food and beverage products (the "NUSA Products") in the United States.

17.     NUSA devotes substantial effort and resources to ensure that NUSA Products are based on the preferences of United States consumers, are safe to consumers, and comply with U.S. laws and regulations.  Before the distribution and sale of NUSA Products, NUSA ensures that NUSA Products are properly manufactured, packaged, and labeled to their intended specifications/formulations, and NUSA conducts quality control checks of the Products.  After the NUSA Products are distributed, NUSA continues to monitor the market by receiving consumer inquiries, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues, including by conducting recalls or initiating legal proceedings.

18.     NUSA sells its Products directly to retailers and through a network of authorized distributors that distribute NUSA Products throughout the United State, including in Texas.  Each of these distributors separately enters into an agreement with NUSA in order to distribute NUSA

Products.  These agreements provide NUSA's authorized distributors with certain rights and benefits—including, in some instances, the exclusive right to distribute NUSA products within a designated region or territory.  By carefully evaluating and negotiating with its authorized distributors, NUSA ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with the NUSA Products.  Where NUSA's distributors fail to provide the high-quality services that NUSA expects, NUSA may take corrective measures.

19.     NUSA's sale of the Products in the United States has been tremendously successful because of its efforts to ensure the high quality of those Products, as well as its substantial investment in the marketing and promotion of NUSA Products to consumers.

*Trademarks for the NUSA Products*

20.     Each of the NUSA Products is marketed under a brand name that is subject to a trademark registered at the U.S. Patent and Trademark Office ("USPTO").  The owner of each trademark is SPN, which has entered into an agreement with NUSA granting NUSA an exclusive license to the rights associated with each trademark in the United States, including the right to enforce the trademark in the United States.

21.     The trademarks owned by SPN and registered with the USPTO (the "Nestlé Marks") that are relevant here include:

(a)     Nestlé.  Since at least 1878, NUSA or its predecessor in interest has continuously used the trademark "Nestlé" on a variety of NUSA Products.  The "Nestlé" mark has been registered at the USPTO under various registration numbers, including 0188089, 0380007, 1105743, 1521476, 1534496, 1622720, 2089943, 2081154, 2121177, 2221586, 3343565, 3716317, 3598791, 4962410, and 4855611.

(b)   <u>Nescafé.</u>   Since at least 1939, NUSA or its predecessor in interest has continuously used the trademark "Nescafé" on a variety of NUSA Products.  The "Nescafé" mark has been registered at the USPTO under various registration numbers, including 0379117, 0843369, 1152592, 2951916, and 4879308.

(c)   <u>Nido.</u>   Since at least 1941, NUSA or its predecessor in interest has continuously used the trademark "Nido" on a variety of NUSA Products.  The "Nido" mark has been registered at the USPTO under various registration numbers, including 0394221 and 4826708.

(d)   <u>Good Food, Good Life.</u>   Since at least 2011, NUSA or its predecessor in interest has continuously used the trademark "Good Food, Good Life" on a variety of NUSA Products.  The "Good Food, Good Life" mark has been registered at the USPTO under various registration numbers, including 4270568 and 4270564.

(e)   <u>Abuelita.</u>   Since at least 1998, NUSA or its predecessor in interest has continuously used the trademark "Abuelita" on a variety of NUSA Products.  The "Abuelita" mark has been registered at the USPTO under various registration numbers, including 4969102 and 4111185.

(f)   <u>Carnation.</u>   Since at least 1899, NUSA or its predecessor in interest has continuously used the trademark "Carnation" on a variety of NUSA Products.  The "Carnation" mark has been registered at the USPTO under various registration numbers, including 0054383, 0112252, 0113006, 0319935, 0184498, 0183986, 0889131, and 1086567.

(g)   <u>La Lechera.</u>   Since at least 1988, NUSA or its predecessor in interest has continuously used the trademark "La Lechera" on a variety of NUSA Products.  The "La

Lechera" mark has been registered at the USPTO under various registration numbers, including 1557025, 4314364, and 5186726.

22.     The Nestlé Marks are inherently distinctive, and have acquired a high degree of fame in the minds of US consumers through consistent use over decades, widespread and substantial advertisement and promotion by NUSA, and tremendous commercial success of the Products nationwide.  Customers throughout the United States recognize the Nestlé Marks as representative of the high of quality Nestlé Products sold by NUSA.

23.     NUSA has spent many millions of dollars annually for products bearing the Nestlé Marks to appear in magazines and newspapers, on billboards, in television commercials, in stores, and on the Internet.  These advertisements are regularly seen by consumers in every state, and the NUSA Products are offered for sale by nearly every major grocery provider across the country.

24.     As a result of these efforts, the Nestlé Marks are famous throughout the United States, including in Texas. The goodwill associated with the Nestlé Marks are of enormous value to NUSA and SPN, and are associated with high-quality food and beverage NUSA Products. Nescafé, for example, which has been popular in the United States since World War II, accounts for approximately one-fifth of all coffee served around the world, and has an estimated brand value of $17.9 billion.[3]  Nescafé is ranked thirty-sixth on Interbrand's 2017 list of Best Global Brands.[4] Similarly, according to Brand Finance's Global 500 2017 report, the Nestlé brand ranked as the sixty-first most valuable brand globally, with a brand value of more than $19 billion.[5]  The Nestlé

---

[3] Forbes, "Nescafe," available at http://www.forbes.com/companies/nescafe/#58a442d65854.
[4] Interbrand, "Best Global Brands 2017 Rankings," available at http://interbrand.com/best-brands/best-global-brands/2017/ranking/.  "Interbrand is a global brand consultancy, and publisher of the highly influential annual Best Global Brands."  *See* Interbrand, "About," available at: http://interbrand.com/about/.
[5] Brand Finance, "Global 500 2017," February 2017, available at http://brandfinance.com/images/upload/global_500_2017_locked_website.pdf.

Marks became famous long before Ultra commenced its illegal and infringing activities that NUSA complains of herein.

***Ultra's Wrongful Distribution and Sale of Nestlé Mexico Products in the United States***

25.     Ultra Mundiales purchases various goods in Mexico, including products manufactured by Nestlé Mexico that are intended for sale only in Mexico.  However, a review of publicly available information, including bills of lading data collected by governmental authorities, reveals that each month Ultra Mundiales sells hundreds of thousands (if not millions) of dollars of Nestlé Mexico products to Ultra International.  Those products are imported into the United States through Tijuana, Mexico into California, and are taken by truck to Ultra International's facilities in San Antonio, Texas.  From there, Ultra International distributes the Nestlé Mexico products in Texas, California, and elsewhere throughout the United States.

26.     Critically, neither NUSA nor SPN have authorized either Ultra Mundiales or Ultra International to distribute or sell Nestlé products in the United States.  NUSA and SPN also have not authorized Ultra Mundiales or Ultra International to use the Nestlé Marks in the United States in any manner.  Nevertheless, since at least 2008, Ultra Mundiales and Ultra International have conspired together to acquire products manufactured by Nestlé Mexico (the "Nestlé Mexico Products") in order to distribute and sell them to retailers and other customers in the United States.

27.     The Nestlé Mexico Products that Ultra Mundiales and Ultra International sell include, among others:

- Nescafé coffee products, such as Nescafé Clásico and Nescafé Estilo Café de Olla;

- Nido powdered drink formulas, including Nido Kinder 1-3 ãnos;

- Chocolate drink products, such as Nestlé Abuelita; and

- Milk and cream products, such as Nestlé Carnation Clavel, Nestlé La Lechera La Original, and Nestlé Media Crema.

28.     Ultra International regularly markets and provides customers in the United States with advertisements that use the Nestlé Marks to advertise Nestlé Mexico Products.  For example, in an advertisement for the Affordable Shopping Destination (or "ASD") Market Week tradeshow (attached in Exhibit A) previously scheduled to take place in Las Vegas, Nevada, between March 22-25, 2020, Ultra International prominently advertises grey market Nescafé Clasico, as is apparent from the Spanish language and metric weight on the front of the label.  The advertisement uses the Nestlé Mark "Nescafé" with its accompanying images.   The advertisement further indicates that grey market Nescafé Clasico would be offered for sale by Ultra at the ASD Market Week tradeshow.  Ultra International regularly participates in such industry trade shows, which take place in different states around the country, where it impermissibly uses the Nestlé Marks to advertise grey market Nestlé Mexico Products to consumers without NUSA or SPN's consent.

29.     Sales by Ultra Mundiales and Ultra International to U.S. customers are substantial, amounting to millions of dollars annually.  As just one example, from at least July 2018, through April 2020, Ultra International sold Nestlé Mexico Products to Wells International Marketing Group, Inc. ("Wells"), a general merchandise wholesaler and distributor based in Commerce, California.  During this period, Ultra International made shipments of Nestlé Mexico Products from Texas to Wells in California in amounts ranging from approximately $100k to $300k or more each month.  Indeed, in 2019, Ultra International sold Wells more than $3 million in grey market Nestlé Mexico Products.  Other customers in Texas, California, and elsewhere have purchased grey market Nestlé Mexico Products from Ultra International and Ultra Mundiales in similar or greater quantities.

30.    The Nestlé Mexico Products distributed by Ultra International (with Ultra Mundiales' participation and direction) in the United States, as explained further below, are materially different from the corresponding NUSA Products marketed under the same brand.  For instance, they use Spanish-only labels with nutritional information and metric units that are inconsistent with FDA regulations; they have in some instances different formulations that are also inconsistent with FDA regulations; and they are subject to different quality control standards and post-sale services.

***Material Differences Between NUSA Products and Nestlé Mexico Products Sold by Ultra***

31.    For each of the Nestlé Mexico Products sold by Ultra International and Ultra Mundiales, there is a similar but materially different NUSA Product that is actually intended for sale in the United States.  The Nestlé Mexico Products sold by Ultra International and Ultra Mundiales use many of the same Nestlé Marks that appear on these NUSA Products.  For example:

| **NUSA Product** | **Nestlé Mexico Product** |
|:---:|:---:|
| Nescafé Clásico | Nescafé Clásico |
|  |  |

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nido Kinder 1+ | Nestlé Kinder 1-3 años |
| | |
| Nestlé Abuelita | Nestlé Abuelita |
| | |
| Nestlé Carnation | Nestlé Carnation Clavel |
| | |

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |
| Nestlé Media Crema Table  Cream | Nestlé Media Crema |
|  |  |

32.     Despite their use of the same Nestlé Marks and similarities in appearance, there are
material differences between the NUSA Products and the Nestlé Mexico Products concerning,
among other things, the information contained on the labels, product composition/formulation, and
post-sale services for the products.

Labels

33.     The Nestlé Mexico Products sold by Ultra International and Ultra Mundiales are
labeled in Spanish while the NUSA Products are labeled in English.  For example:



| NUSA Product | Nestlé Mexico Product |
| --- | --- |
| Nestlé Abuelita | Nestlé Abuelita |
| Nestlé Carnation | Nestlé Carnation Clavel |

| **NUSA Product** | **Nestlé Mexico Product** |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |



34.     This Spanish-language-only labelling of the Nestlé Mexico Products is a violation of FDA regulations that require products sold in the United States to be labeled in English and allow labeling in a foreign language such as Spanish only when all required label elements are provided in both English and Spanish.  *See* 21 CFR 101.15(c)(2).

35.     Many of the labels for the Nestlé Mexico Products refer to a website affiliated with Nestlé Mexico, recetasnestle.com.mx, whereas the corresponding labels for the NUSA Products refer to websites affiliated with NUSA, such as cocinandoconnestle.com and lalechera.com. Likewise, many of the labels for the Nestlé Mexico Products provide a customer service line affiliated with Nestlé Mexico, whereas the corresponding labels for the NUSA Products provide a customer service line affiliated with NUSA.  For example:



| NUSA Product | Nestlé Mexico Product |
| --- | --- |
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
| Nestlé Media Crema Table Cream | Nestlé Media Crema |

The websites and customer service line identified on labels of the Nestlé Mexico Products will not allow U.S. consumers to contact the firm responsible for the Products in the event of a safety or quality concern.

36.      The Nutrition Facts Panel on the label for the NUSA Products complies with FDA regulations, which specify certain formatting for font sizes, bolding, spacing, and lines between text, as well as naming and order of nutrients listed.  *See* 21 CFR 101.9(c), (d).  The NUSA Products also comply with FDA regulations by providing serving sizes in appropriate units.  *See* 21 CFR 101.9(b).  Further, consistent with new FDA nutrition labeling regulations that went into

effect on January 1, 2020, the NUSA Products' labels identify the added sugar content of the products and list calories in a designated larger font.

37. However, the nutrition labels for the Nestlé Mexico Products are different in appearance and content from the Nutrition Facts Panels on the labels for the NUSA Products. Many of the Nestlé Mexico Products' nutritional information lacks the font sizes, bolding, spacing, lines between texts, and naming and order of nutrients mandated by FDA regulations, and/or do not provide serving sizes in the units required by FDA regulations. Further, none of the Nestlé Mexico Products identify their added sugar content or list calories in a designated larger font. In addition, many of the Nestlé Mexico Products provide different nutritional information than the NUSA Products because they may have different formulations and/or recommended serving sizes.

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |



| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé Abuelita | Nestlé Abuelita |
|  |  |

38.     The labels for the NUSA Products identify the quantity of the NUSA Products in both U.S. Customary and metric units as required by FDA regulations.  In contrast, the labels for the Nestlé Mexico Products sold by Ultra International and Ultra Mundiales use only metric units. For example:



| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
| Nestlé Carnation | Nestlé Carnation Clavel |

Product Composition and Formulation

39.     The product compositions and formulations of the NUSA Products and Nestlé Mexico Products may also differ.  For example, the NUSA and Nestlé Mexico versions of La Lechera have different fat and sugar content:

|  | Content Per Serving | |
|---|---|---|
|  | NUSA | Nestlé Mexico |
| Fat Content | 3.5g | 2g |
| Sugar Content | 22g | 23.6g |

40.     Likewise, the NUSA and Nestlé Mexico versions of Nestlé Media Crema have different fat and sugar content:

|  | Content Per Serving | |
| --- | --- | --- |
|  | NUSA | Nestlé Mexico |
| Fat content | 4g | 3g |
| Sugar content | 0g | .6g |

Other Material Differences

41.     Beyond differences in their labelling and formulations, there are a number of additional material differences between the NUSA Products and the Nestlé Mexico Products.

42.     For example, before NUSA Products are distributed and sold in the United States, they are subject to food safety and quality assurance processes to ensure they meet the requirements of U.S. laws and regulations.  Products that Nestlé Mexico manufactures for distribution in Mexico must conform to Mexico's food safety and quality standards, which are different from those in the U.S.  In addition, in the event of a quality issue or a product recall involving these Mexican manufactured products, it may be difficult to trace the products and their ingredients to determine the source of the issue.

43.     NUSA also offers a number of post-sale services for the NUSA Products, including returns, spoils allowances, "scan-backs," customer service, and in-store demonstrations.  These services result in a different experience for retailers and consumers of NUSA Products compared to retailers and consumers of grey market Nestlé Mexico Products distributed by Ultra International (with Ultra Mundiales' knowledge and direction):

        (a)     Returns: NUSA allows returns of certain NUSA Products if retailers and/or customers are dissatisfied with those NUSA Products.  However, because NUSA never

distributed the Nestlé Mexico Products diverted by Ultra International and Ultra Mundiales, retailers and customers who purchased those products will not be able to return them to NUSA, potentially damaging the customer perception of NUSA and the Nestlé Marks.

(b)     Spoils Allowances and "Scan-Backs": NUSA provides certain credits to retailers for NUSA Products that have been spoiled or damaged, and for NUSA Products that have been sold at a discounted price.  These credits help prevent retailers from losing money on products that are damaged or spoiled, or that remain unsold.  They also encourage retailers to remove spoiled and/or damaged products from their shelves, and to offer lower prices for NUSA Products.  However, NUSA cannot provide credits for Nestlé Mexico Products because NUSA did not provide those Nestlé Mexico Products to retailers in the first instance.

(c)     Customer Service: Retailers and consumers who have purchased NUSA Products may contact NUSA's customer service staff in the United States to address any concerns that they have about their NUSA Products, and NUSA's customer service staff can address those concerns.  However, NUSA's customer service staff cannot address concerns that retailers and consumers raise about Nestlé Mexico Products that they have purchased, as NUSA had no involvement in the Nestlé Mexico Products' manufacture, labelling, distribution, or sale.

(d)     In-Store Demonstrations: When a retailer sells NUSA Products, NUSA provides certain in-store demonstrations of the NUSA Products for retailers and consumers, thereby better informing them about how to properly use the NUSA Products and encouraging further sales at those locations.  However, NUSA does not provide in-

store demonstrations for the Nestlé Mexico Products distributed by Ultra International. This deprives consumers of information about their purchases and dampens consumer demand.

44.     By providing these post-sale services for the NUSA Products, NUSA builds goodwill for itself, the NUSA Products, and the Nestlé Marks in the United States.  However, U.S. purchasers of Nestlé Mexico Products do not enjoy those services, thereby diminishing the goodwill of the Nestlé Marks.

***Ultra's Use of Stickers on Certain Nestlé Mexico Products***

45.     In some instances, Ultra International and Ultra Mundiales have distributed and/or sold Nestlé Mexico Products that include unauthorized stickers on top of the original product labels.

46.     For example, the Nestlé Media Crema La Original products being sold through retailers for whom Ultra International is a distributor include stickers on both the front and the back side of the product.  This is obvious when comparing the product being distributed through Ultra International to an image of the original Nestlé Mexico Product:

| Original Appearance | Appearance with Sticker |
|:---:|:---:|
|  |  |

| Sticker Applied to Back of Nestlé Media Crema La Original |
|---|



47.     The stickers that appear on this product provide some nutritional and ingredients information intended to create the impression that retailers and/or consumers are purchasing a NUSA Product and/or that the Nestlé Mexico Product complies with U.S. labeling requirements and other regulations.  However, the stickers are insufficient to bring the Nestlé Mexico Product into compliance with U.S. regulations.  For instance, the product's net weight declaration does not appear on the principal display (front) panel of the product, as required by 21 CFR 101.107.

48.     As another example, Ultra International and Ultra Mundiales have sold the Nestlé Mexico versions of Nescafé Clásico and Nestlé Carnation with stickers purporting to provide nutritional information that fail to meet FDA requirements.  For instance, under 21 C.F.R. 101.15(c), any product that makes representations in Spanish must include all required labeling elements—including nutritional facts and ingredients information—*both* in English and in Spanish.  This requirement ensures that, when a foreign language is used to attract non-English-

speaking consumers, speakers of the foreign language are able to obtain all the information the FDA deems necessary to make educated food purchasing decisions.  Ultra International and Ultra Mundiales have violated this requirement by selling products with English-language-only nutrition labels covering the Spanish-language nutrition labels.

49.     The stickered Nescafé Clásico and Nestlé Carnation products sold by Ultra International and Ultra Mundiales also fail to comply with the FDA's regulations because their net weight declaration does not appear on the principal display (front) panel of the product, and their "Nutrition Facts" panels do not meet the necessary format and content requirements, such as appropriate hairline thickness or placement between lines of text (*see* 21 CFR 101.9(d)); font sizes, bolding, naming (*e.g.*, kcal and lipids), and order of certain nutrients do not comply with FDA regulations (*see* 21 CFR 101.9(c)); and/or serving sizes that are not appropriately calculated in common household units (*see* 21 CFR 101.9(b)).

50.     By selling products with stickers that fail to comply with the FDA's labeling requirements, Ultra International and Ultra Mundiales undermine the FDA's efforts to ensure that consumers make informed food choices, to facilitate price comparisons, and to prevent fraud upon consumers.  Ultra International and Ultra Mundiales' failure to comply with federal regulations also undermines goodwill for NUSA, its products, and the Nestlé Marks throughout the United States.

***Effects of Ultra's Wrongful Conduct on NUSA and Its Customers***

51.     Retailers and consumers have purchased Nestlé Mexico Products sold and distributed by Ultra International and Ultra Mundiales under the mistaken belief that those products are NUSA Products, and/or that the distribution and sale of those products is associated with NUSA.  As a result, those retailers and consumers have purchased materially different products from the ones they believed they were purchasing—products that lack the required label

25

statements, product formulation, quality control, food safety compliance, and post-sale services that they were expecting. This consumer confusion and resulting damage to NUSA and the goodwill associated with the Nestlé Marks is likely to continue if Ultra International and Ultra Mundiales' infringing activities are not stopped. This has harmed and continues to harm NUSA's goodwill and reputation, and the goodwill associated with the Nestlé Marks in the United States, resulting in enormous harm and damages to NUSA and SPN.

52.     Further, by circumventing legitimate distribution channels and quality control procedures, and by failing to provide the services that NUSA and its legitimate distributors provide to retailers and customers, in many instances Ultra Mundiales and Ultra International have been able to offer artificially low prices for the Nestlé Mexico Products.  As a result, some retailers and consumers have purchased Nestlé Mexico Products imported and sold in the US by Ultra International, rather than NUSA Products intended for distribution and sale in the United States. These transactions have resulted and will continue to result in substantial losses to NUSA and its authorized distributors, disruptions to NUSA's business relationships with its customers and the rights that NUSA has granted to its authorized distributors.  This harm to NUSA, its business partners, and consumers will continue if Ultra International and Ultra Mundiales' infringing activities are not stopped.

53.     Ultra International and Ultra Mundiales have engaged in this unlawful conduct despite knowing that they are infringing upon NUSA and SPN's rights to the Nestlé Marks in the United States.

## **FIRST CAUSE OF ACTION**

### **Trademark Infringement, 15 U.S.C. § 1114(1)**

### **Against All Defendants**

54.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 53 above as if fully set forth herein.

55.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

56.     In the United States, NUSA or its predecessors have used the Nestlé Marks continuously for decades—and in some cases, more than a century—to identify their goods and distinguish them from those made and sold by others by, among other things, prominently displaying the Nestlé Marks on the NUSA Products and their packaging and marketing materials.

57.     Defendants have infringed NUSA's rights to the Nestlé Marks in interstate commerce by various acts, including advertising, distributing, and offering for sale goods bearing the Nestlé Marks which were manufactured solely for the Mexican market, and were not manufactured by NUSA for sale in the United States under the Nestlé Marks.

58.     Defendants' acts of infringement are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendants' products, or that Defendants are associated with or related to NUSA or are authorized by NUSA to distribute or sell the NUSA Products in the United States.

59.     Defendants' acts of infringement have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted Nestlé

Mexico Products. Defendants' acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

60.     Defendants had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendants' adoption and use of the Nestlé Marks, and Defendants continue to use the Nestlé Marks with actual knowledge of infringing conduct.

61.     Plaintiffs have not consented to Defendants' use of the Nestlé Marks for any purpose, and neither NUSA nor SPN have consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

62.     By reason of Defendants' wrongful acts of infringement, Plaintiffs have suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

63.     Further, by reason of Defendants' wrongful acts of infringement, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

64.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, gain and business opportunities as a result of their acts of infringement.

65.     By reason of the foregoing, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Nestlé Mexico Products to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, treble damages, disgorgement of Defendants' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## SECOND CAUSE OF ACTION

### False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)

### Against All Defendants

66.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 65 above as if fully set forth herein.

67.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

68.     Defendants have, without authorization, imported, distributed, and sold in the United States unauthorized or diverted products featuring the Nestlé Marks, which are products that are materially different from the NUSA Products authorized for U.S. sale by NUSA.

69.     Defendants' unauthorized importation, distribution, and sale of products bearing the Nestlé Marks that are materially different from the NUSA Products sold by NUSA in the United States places the nature and quality of products bearing the Nestlé Marks that are sold in the United States beyond the control of NUSA and SPN and deprives NUSA and SPN of the ability to control the same.[6]

70.     Defendants' acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with NUSA, and as to the origin, sponsorship, and/or approval of Defendants' goods, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendants' products, or that Defendants are associated with or

---

[6] As the exclusive licensee of the Nestlé Marks in the United States, NUSA has the authority to control the nature and quality of products sold under the Nestlé Marks in the United States.

related to NUSA or are authorized by NUSA to distribute or sell products bearing the Nestlé Marks in the United States.

71.     Defendants' acts of false designation of origin and unfair competition have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted Nestlé Mexico Products.  Defendants' acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive retailers and end consumers.

72.     Defendants had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendants' adoption and use of the Nestlé Marks, and Defendants continue to use the Nestlé Marks with actual knowledge of infringing conduct.

73.     Plaintiffs have not consented to Defendants' use of the Nestlé Marks for any purpose, and neither NUSA nor SPN have consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

74.     By reason of Defendants' wrongful acts of unfair competition, Plaintiffs have suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

75.     Further, by reason of Defendants' wrongful acts of unfair competition, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

76.     Defendants' acts of unfair competition are causing substantial harm to NUSA as the exclusive licensee of rights to sell products under the Nestlé Marks in the United States.

77.     If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of unfair competition.

78.     By reason of the foregoing, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Nestlé Mexico Products to be destroyed pursuant to 15 U.S.C. § 1118, and to actual damages, treble damages, disgorgement of Defendants' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## THIRD CAUSE OF ACTION

### Trademark Dilution, 15 U.S.C. § 1125(c)

### Against All Defendants

79.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 78 above as if fully set forth herein.

80.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

81.     The Nestlé Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

82.     The Nestlé Marks are widely recognized by the general consuming public of the United States as a designation of source of NUSA's goods, including the NUSA Products.

83.     The Nestlé Marks became famous source indicators for the NUSA Products long before Defendants commenced their infringing activities.

84.     Defendants' acts have diluted the Nestlé Marks in the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and

distinguish goods intended for different markets.  In addition, Defendants' distribution and sale of goods intended for the Mexican market (which may have different formulations, label information, and/or post-sale services than consumers expect) in the United States and Defendants' placement of unauthorized stickers in a manner that defaces the Nestlé Marks and fails to comply with relevant regulations have diluted the Nestlé Marks by tarnishment.

85.    Defendants had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendants' adoption and use of the Nestlé Marks, and Defendants continue to use the Nestlé Marks with actual knowledge of infringing conduct.

86.    Plaintiffs have not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

87.    Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court.  Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products in the United States.

## FOURTH CAUSE OF ACTION

**Unlawful Importation of Goods Infringing U.S. Trademarks or Names,**

**15 U.S.C. § 1124 and 19 U.S.C. § 1526**

**Against All Defendants**

88.    Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 87 above as if fully set forth herein.

89.    In the United States, NUSA is the exclusive licensee of the Nestlé Marks, which are registered with the USPTO.  Defendants imported the Nestlé Mexico Products, which bear the Nestlé Marks, into the United States without the permission of NUSA.

90.     By reason of Defendants' wrongful importing of the Nestlé Mexico Products that are materially different from products authorized for sale in the United States under the Nestlé Marks, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

91.     By reason of the foregoing, Plaintiffs are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products in the United States, and/or seizure of the Nestlé Mexico Products and/or requiring the Defendants to destroy the Nestlé Mexico Products in their possession, as well as actual damages, treble damages, disgorgement of Defendants' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## FIFTH CAUSE OF ACTION

### Trademark Dilution Tex. Bus. & Com. Code Ann. § 16.103

### Against All Defendants

92.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 91 above as if fully set forth herein.

93.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

94.     The Nestlé Marks are famous and distinctive within the meaning of Texas Business and Commerce Code § 16.103.

95.     The Nestlé Marks are widely recognized by the general consuming public of Texas as a designation of source of NUSA's goods, including the NUSA Products.

96.     The Nestlé Marks became famous source indicators for the NUSA Products long before Defendants commenced their infringing activities.

97.     Plaintiffs have not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

98.     Defendants' acts have diluted the Nestlé Marks in Texas and the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets.  Defendants' acts have further diluted the Nestlé Marks in Texas and the United States by tarnishing them, given the material differences between the NUSA Products and the Nestlé Mexico Products.

99.     Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court.  Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products.

## SIXTH CAUSE OF ACTION

### Trademark Dilution, Cal. Bus. Prof. Code § 14247

### Against All Defendants

100.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 99 above as if fully set forth herein.

101.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

102.     The Nestlé Marks are famous and distinctive within the meaning of California Business and Professions Code § 14247.

103.    The Nestlé Marks are widely recognized by the general consuming public of California as a designation of source of NUSA's goods, including the NUSA Products.

104.    The Nestlé Marks became famous source indicators for the NUSA Products long before Defendants commenced their infringing activities.

105.    Plaintiffs have not consented to Defendants' use of the Nestlé Marks for any purpose, and NUSA has not consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

106.    Defendants' acts have diluted the Nestlé Marks in California and the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets.  Defendants' acts have further diluted the Nestlé Marks in California and the United States by tarnishing them, given the material differences between the NUSA Products and the Nestlé Mexico Products.

107.    Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court.  Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products.

**SEVENTH CAUSE OF ACTION**

**Unfair Competition, Cal. Bus. Prof. Code §§ 17200 et seq.**

**Against All Defendants**

108.    Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 107 above as if fully set forth herein.

109.    Defendants have failed to comply with California Civil Code §§ 1798.8-1797.86, which require sellers and dealers of grey market goods to disclose incompatibilities and

nonconformities with relevant domestic standards on their products and accompanying advertisements, among numerous other requirements.

110.    Defendants' marketing and advertisement of products with the Nestlé Marks in the United States, as alleged herein, was intended to and did mislead customers to purchase Nestlé Mexico Products from Defendants with the belief that such products were manufactured or distributed by, or authorized for manufacture or distribution by, NUSA, in violation of California Business and Professions Code § 17500.

111.    This conduct, together with the Defendants' other acts alleged herein, constitute unfair, unlawful, and fraudulent business acts and practices under California Business and Professions Code § 17200, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiffs.  Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court, and NUSA is without an adequate remedy at law.

112.    As a result of the Defendants' wrongful conduct, Plaintiffs are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products and restoring NUSA funds that were wrongfully collected by Defendants.

## EIGHTH CAUSE OF ACTION

### Unfair Competition by Misappropriation

### Against All Defendants

113.    Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 112 above as if fully set forth herein.

114.    NUSA has devoted a substantial amount of effort and resources to develop and promote its products, ensure that NUSA Products are of the highest quality and based on the

preferences of United States consumers, are safe to consumers, and comply with U.S. laws and regulations.

115.   Ultra is a "free rider," unfairly profiting off of the value of Nestlé's trademarks and the investment that NUSA and its authorized distributors have made in creating consumer demand for Nestlé products.

116.   Defendant has circumvented legitimate distribution channels and quality control procedures, and failed to provide the services that NUSA and its legitimate distributors provide to retailers and customers.  As a result, Ultra has been able to offer artificially low prices for the Nestlé Mexico Products.

117.   Some retailers and consumers have therefore purchased Nestlé Mexico Products imported by Ultra, rather than NUSA Products intended for distribution and sale in the United States, creating consumer confusion, diminishing the value of the Nestlé Marks, and resulting in substantial losses to NUSA and its authorized distributors

118.   As a result of the Defendants' wrongful conduct, Plaintiffs are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products and restoring to NUSA funds that were wrongfully collected by Defendants.

## **NINTH CAUSE OF ACTION**

### **Common Law Unfair Competition**

### **Against All Defendants**

119.   Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 118 above as if fully set forth herein.

120.   NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States

in connection with the NUSA Products.  In the United States, NUSA or its predecessors have used the Nestlé Marks continuously for decades.

121.   Defendants have and continue to engage in unfair competition by infringing NUSA's rights to the Nestlé Marks by various acts, including advertising, distributing, and offering for sale goods bearing the Nestlé Marks which were manufactured solely for the Mexican market, and were not manufactured by NUSA for sale in the United States under the Nestlé Marks.

122.   Defendants' acts of unfair competition are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendants' products, or that Defendants are associated with or related to NUSA or are authorized by NUSA to distribute or sell the NUSA Products in the United States.

123.   Defendants' acts of unfair competition have been committed deliberately and willfully, with actual and constructive knowledge of NUSA's exclusive and superior rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of Defendants' conduct. Defendants' acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

124.   By reason of Defendants' acts of unfair competition, Plaintiffs have suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

125.   Further, by reason of Defendants' acts of unfair competition, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their

rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

126.    As a result of the Defendants' acts of unfair competition, Plaintiffs are entitled to, among other relief, an order enjoining and restraining Defendants from diverting, distributing, and selling the Nestlé Mexico Products and restoring to NUSA funds that were wrongfully collected by Defendants.

### TENTH CAUSE OF ACTION

**Tortious Interference with Existing Business Relations**

**Against All Defendants**

127.    Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 126 above as if fully set forth herein.

128.    NUSA had existing economic relationships with each of its existing customers. Each of those relationships benefited NUSA economically and likely would have continued to benefit NUSA economically in the future.

129.    The Defendants were aware of NUSA's economic relationships with its existing customers by virtue of their direct contact with those existing customers, as well as their familiarity with the business of distributing and selling food and beverage products in the United States.

130.    The Defendants intentionally interfered with those economic relationships, and/or knew that the disruption of such relationships was certain or substantially certain to occur, when they wrongfully and unlawfully used the Nestlé Marks, and distributed and sold Nestlé Mexico Products in the United States without the permission of NUSA.  NUSA's relationships with its customers were disrupted, resulting in harm to NUSA, and Defendants' conduct was a substantial factor in causing that harm.

131.    As a result of Defendants' tortious interference with NUSA's business relations, Plaintiffs are entitled to, among other relief, damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs NUSA and SPN pray for judgment against the Defendants as follows:

(1)    Preliminary and permanent injunctive relief against the Defendants and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them, from doing any of the following acts, either directly or indirectly:

    (a)    Acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the Nestlé Marks;

    (b)    Using any of the Nestlé Marks or any other trademark owned by SPN and/or licensed to NUSA in connection with their business;

    (c)    Otherwise infringing the Nestlé Marks or any other trademark owned by SPN and/or licensed to NUSA;

    (d)    Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the NUSA Products or any other products manufactured, distributed, or sold by NUSA and/or that bears the Nestlé Marks;

    (e)    Using any false designation of origin or false representation concerning the NUSA Products or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks; and

(f)     Any acts of unfair competition or unfair practice affecting NUSA, the NUSA Products, or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks;

(2)    For an order directing the Defendants, and each of them, to file with this Court and serve on Plaintiffs within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(3)    For an order to destroy the Nestlé Mexico Products or any other products bearing the Nestlé Marks in the possession of the Defendants and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

(4)    For an order seizing the Nestlé Mexico Products or any other products bearing the Nestlé Marks in the possession of the Defendants and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

(5)    For an accounting and disgorgement of all of Defendants' profits resulting from its sale of the Nestlé Mexico Products and any other products bearing a Nestlé Mark in the United States;

(6)    For an order awarding Plaintiffs damages in an amount to be determined, as well as treble damages, prejudgment and post judgment interest on its damages award, punitive damages, and Plaintiff's reasonable attorneys' fees and costs of suit;

(7)    Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs NUSA and SPN demand a trial by jury of all issues so triable.

Dated: July 6, 2020                                MAYER BROWN LLP

By: */s/ Charles S. Kelley*
      Charles S. Kelley
      Texas Bar No. 11199580
      MAYER BROWN LLP
      700 Louisiana Street, Suite 3400
      Houston, Texas 77002
      Telephone: (713) 238-2634
      Mobile (281) 300-5455
      Fax: (713) 238-4634
      Email: ckelley@mayerbrown.com

      Adam Hudes
      District of Columbia Bar No. 495188
      MAYER BROWN LLP
      1999 K Street, N.W.
      Washington, D.C. 20006
      Telephone: (202) 263-3000
      Fax: (202) 263-3300
      Email: ahudes@mayerbrown.com

      Dale Giali
      California State Bar No. 150382
      MAYER BROWN LLP
      350 South Grand Avenue
      Los Angeles, California 90071
      Telephone: (213) 229-9500
      Fax: (213) 625-0248
      Email: dgiali@mayerbrown.com

      Attorneys for Plaintiffs Nestlé USA, Inc. and
      Société des Produits Nestlé S.A.

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of July, 2020, a true and correct copy of the above and foregoing instrument was electronically filed with the Court  and forwarded via ECF to all parties of record.

*/s/ Charles S. Kelley*
Charles S. Kelley
