

FILED
January 28, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
         DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NESTLE USA, INC., SOCIETE DES PRODUITS NESTLE S.A., | § § § | |
| Plaintiffs, | § § | CIVIL NO. SA-20-CV-00384-OLG |
| v. | § § | FILED UNDER SEAL |
| ULTRA DISTRIBUCIONES MUNDIALES S.A. DE C.V., ULTRA INTERNATIONAL DISTRIBUTORS, INC., | § § § § § | |
| Defendants. | | |

## ORDER ON MOTION TO JOIN AND MOTION FOR LEAVE TO AMEND

Before the Court are Defendants' Motion to Join Nestlé S.A. as a Necessary Party (the "Motion to Join"), Dkt. No. 62, and Defendants' Opposed Motion for Leave to Amend Answer to Add Counterclaims (the "Motion for Leave"), Dkt. No. 76. Judge Ezra's opinion on Defendants' motion to dismiss sets forth Plaintiffs' allegations in detail. *See Nestle United States v. Ultra Distribuciones Mundiales S.A.*, 516 F. Supp. 3d 633, 640–41 (W.D. Tex. 2021). In short, Plaintiffs are suing Defendants for allegedly violating their trademarks by improperly selling Nestlé products, which are meant for sale in Mexico, in the United States. *See id.* Now, Defendants seek to require that Nestlé S.A. be joined as a party to this case and seek to assert counterclaims based on Texas and Mexican law. Having reviewed the record, the parties' arguments, and the applicable law, the Court finds that both the Motion to Join and the Motion for Leave should be DENIED.

## DISCUSSION

### I.  Defendants Cannot Show that Nestlé S.A. is a Necessary Party under Rule 19.

Defendants seek an order under Federal Rule of Civil Procedure 19(a)(1)(B) directing that Nestlé S.A.—the Plaintiffs' "ultimate parent company" (Dkt. No. 69)—either join this case as a

plaintiff or be served as a defendant. *See generally* Motion to Join. Defendants do not currently seek to dismiss Plaintiffs' lawsuit for failure to join an indispensable party. *See id.* at 3. "

Rule 19 is designed to protect the interests of *absent persons* as well as those already before the court from multiple litigation or inconsistent judicial determinations." *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 584 (5th Cir. 2020). Federal Rule of Civil Procedure 19(a)(1) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If an absent person meets those requirements, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). "While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009) (internal quotation marks omitted).

The parties argue at length about whether Defendants have waived their ability to bring this challenge and whether Nestlé S.A. is a beneficial owner of the trademarks at issue in this case, which, Defendants argue, would grant it the ability to sue them for various trademark violations. *See* Motion to Join at 1–15; Dkt. No. 69 at 6–20; Dkt. No. 75 at 3–11. But the Court need not wade into most of the myriad factual and legal issues raised by the parties because Defendants

cannot show that Nestlé S.A. either claims an interest in the subject matter of this litigation (*see* Rule 19(a)(1)(B)) or that there "is substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if Nestlé S.A. is not joined. Fed. R. Civ. P. 19(a)(1)(B)(ii).

Plaintiffs included a declaration from a "Nestlé lawyer" who is "General Counsel for the Zone Americas" with their response to the Motion to Join. *See* Declaration of Jacqueline Donaldson ¶ 2 ("Donaldson Decl."), Dkt. No. 69-1. Ms. Donaldson declares that she has "supervisory authority over Nestlé litigation matters in the Americas Region, which includes U.S. and other North and South American countries." *Id.* Ultimately, Ms. Donaldson states that Nestlé S.A. agrees to "be bound by any and all legal determinations made by this Court in the current litigation with respect to any Nestlé trademarks involved in this litigation" and "will not pursue any legal action against Defendants resulting from [Defendants'] use, misuse, or infringement of the relevant trademarks or for any of the other claims asserted or that could have been asserted by Plaintiffs in this case." *Id.* ¶¶ 5, 6.

Plaintiffs argue that, considering these assurances from Ms. Donaldson, Defendants cannot satisfy the "double, multiple, or otherwise inconsistent obligations" prong of Rule 19(a)(1)(B). *See* Dkt. No. 69 at 12–13. Defendants raise essentially three arguments attacking the effect of the Donaldson Declaration. First, they highlight perceived deficiencies of some of the non-binding authorities raised by Plaintiffs (Dkt. No. 75 at 10–11); second, they assert the Donaldson Declaration does render Nestlé S.A. unnecessary because it has not voluntarily subjected itself to discovery in this case (*id.* at 11); and finally, they highlight omissions of the Declaration itself (*id.* at 10). None of these arguments render Nestlé S.A. a necessary party.

First, Defendants critique certain authorities premised on patent law, arguing that those cases do not "remain good law." Dkt. No. 75 at 10. Irrespective of whether that is correct, none

of these authorities are either controlling or dispositive here. *See Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1380-81 (Fed. Cir. 2000); *Toshiba Corp. v. Wistron Corp.*, 270 F.R.D. 538, 541 (C.D. Cal. 2010); *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1163 (D. Kan. 2009). In *Innovative Health Solutions., Inc. v. DyAnsys, Inc.*, the Northern District of California squarely addressed this issue in the context of several Lanham Act claims. No. 14-CV-05207-SI, 2015 WL 2398931, at *4–6 (N.D. Cal. May 19, 2015). There, the trademark owner and a licensee were not party to the lawsuit. *Id.* at *6. That court concluded that the mark owner and licensees were unnecessary under Rule 19 because the owner had "assigned all of its rights to protect the . . . trademark to plaintiff, and the other licensee does not claim an interest in this litigation." *Id.* Further, the court accepted the representations of plaintiff's counsel and a declaration from the trademark owner to conclude that "defendants [were] not at risk of facing multiple lawsuits because [the mark owner] ha[d] agreed to be bound by any and all legal determinations made by this Court regarding the mark." *Id.*; *see also Her Majesty Queen in Right of Canada as Represented by Minister of Agric. & Agri-Food v. Van Well Nursery, Inc.*, No. 2:20-CV-00181-SAB, 2021 WL 131261, at *9 (E.D. Wash. Jan. 13, 2021) (similar holding related to a patent owner).

This Court agrees with the *Innovative* court. Nestlé S.A. does not claim an interest in the outcome of this litigation; indeed, it has affirmatively disclaimed any such interest. *See* Dkt. No. 69 at 12–13; Donaldson Decl. ¶¶ 5–6. Moreover, there is now no risk that Defendants will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Other courts have reached similar conclusions in other contexts. *See, e.g., United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (the non-party "was aware of this action and chose not to claim an interest. That being so, the

district court did not err by holding that joinder was 'unnecessary.'"); *Overpeck v. Fedex Corp.*, No. 18-cv-07553-PJH, 2021 U.S. Dist. LEXIS 44178, at *7–8 (N.D. Cal. Mar. 9, 2021) ("Having considered their declarations, the court now also finds that joinder of these parties would not be proper under Rule 19(a)(1)(B), as they do not 'claim[] an interest relating to the subject matter of the action' as required by the rule."); *Cheese Depot, Inc. v. Sirob Imps., Inc.*, No. 14-CV-1727, 2016 U.S. Dist. LEXIS 159244, at *7 (N.D. Ill. Nov. 17, 2016) ("It is the absent party that typically must claim an interest to require joinder under rule 19(a).") (internal quotation marks omitted); *Romag Fasteners, Inc. v. Bauer*, 2011 U.S. Dist. LEXIS 130098, at *11–12 (S.D.N.Y. Nov. 9, 2011) ("In light of [the non-party's] express disclaimer of any interest in [the subject matter of the litigation], Rule 19(a)(1)(B) cannot be used by the Bauer Entities to argue that [the non-party] is a necessary party to this action."). The decision in *Association of Co-operative. Members, Inc. v. Farmland Industries, Inc.* is not to the contrary. 684 F.2d 1134, 1143 (5th Cir. 1982). There, the Fifth Circuit stated that the "licensor of a trademark is usually treated as a necessary or indispens[a]ble party in an infringement action by its licensee." *Id.* But unlike the discussion in *Farmland*, which concerned the licensor's interest in protecting its own trademark, Nestlé S.A. has disclaimed any interest in the subject marks.

Next, Defendants argue that Nestlé S.A. must subject itself to discovery in this lawsuit before the Court concludes it is not necessary under Rule 19. Dkt. No. 75 at 11. Defendants highlight that in *Innovative*, the non-parties agreed to participate in discovery. *See Innovative*, 2015 WL 2398931 at *6. But that agreement was neither determinative in *Innovative* nor was it necessary under Rule 19. *See id.*; *see generally* Fed. R. Civ. P. 19. Accordingly, an agreement on discovery is not "conspicuously absent" from the Donaldson Declaration; it is not required. Dkt. No. 75.

Finally, Defendants correctly note that the Donaldson Declaration does not indicate which "Nestlé" entity Ms. Donaldson represents. *See* Donaldson Decl. ¶ 2. However, Plaintiffs' representations in their briefing, when coupled with Ms. Donaldson's descriptions of her responsibilities, make it apparent that she has the authority to bind Nestlé S.A. However, because there is ambiguity in the Donaldson Declaration, the Court will require additional assurances from Plaintiffs. To ensure Ms. Donaldson's representations are genuine, Plaintiffs shall publicly file confirmation that Ms. Donaldson has the authority to bind Nestlé S.A. by the deadline set forth below. If Plaintiffs are unable to provide this confirmation, Defendants may move for reconsideration of this decision. Further, Plaintiffs shall re-file the Donaldson Declaration publicly so that it is readily available in any future proceedings, if necessary. Because Nestlé S.A. is not a necessary party, the Court will deny the Motion to Join.

## II. Defendants Have Not Demonstrated Good Cause to Add Counterclaims at this Stage of the Litigation.

Pursuant to the Scheduling Order in this case, "all motions to amend or supplement pleadings or to join additional parties" were due on or before October 13, 2020. Dkt. No. 32 ¶ 3. Relying on Federal Rule of Civil Procedure 15, Defendants filed their Motion for Leave on August 27, 2021, seeking to amend their answer to Plaintiffs' amended complaint to assert three counterclaims based on Texas law, the Mexican Federal Civil Code, and the Coahuila State Civil Code. *See* Dkt. No. 76-1 at 15–18. Those counterclaims generally allege that Nestlé USA, through Nestlé Mexico, instructed wholesalers in Mexico to "make it impossible for Ultra Mexico to continue purchasing Nestlé products." *Id.* ¶ 160. Defendants claim that these actions were taken in retaliation for Defendants filing two motions in this Court—a motion to compel documents from Nestlé Mexico and the Motion to Join. *Id.* ¶¶ 163–165. Those motions were filed in May and June 2021, respectively.

Although Federal Rule of Civil Procedure 15 typically requires that leave to amend pleadings be "freely" given, the Fifth Circuit has held that Rule 16 governs the amendment of pleadings after the expiration of a scheduling order's deadline to amend. *See Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[O]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters.*, 315 F.3d at 536. The Fifth Circuit has identified four factors relevant to the good cause inquiry: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.[1] *Id.*; *see also Fahim*, 551 F.3d at 348. As Defendants explain, and Plaintiffs do not refute, Defendants' proposed counterclaims are based on conduct that allegedly occurred after the deadline to amend the pleadings, in mid-2021. Accordingly, the first factor weighs in favor of finding good cause. However, the remaining factors warrant further discussion.

Defendants claim that their proposed counterclaims are sufficiently important to grant leave because litigating the counterclaims now "is the most efficient and least burdensome" way to resolve those issues. Dkt. No. 87 at 3. Additionally, the "information relevant to the counterclaims is necessarily intertwined with information that relates to Defendants' affirmative

---

[1] In their opening motion, Defendants do not address Rule 16 or these factors directly. *See generally* Motion for Leave. Plaintiffs contend that this failure alone "should doom [Defendants'] motion." Dkt. No. 80 at 8. However, because there is some overlap between the factors articulated by Defendants (e.g. prejudice to Plaintiffs), the Court will address Defendants' arguments in both its opening and reply briefing. *See* Motion for Leave at 5–6; Dkt. No. 87 at 2–6.

defenses." *Id.* at 3–4. It is far from clear whether it would be more efficient to litigate the proposed counterclaims here. While the parties are certainly already familiar with their contentions and conduct in this case, allowing the counterclaims to proceed as a "case within a case" would likely cause unnecessary delay *of* the trial and confusion *at* trial. Further, as Plaintiffs point out, Defendants concede they "could bring a stand-alone action against NUSA . . . ." Motion for Leave at 6. Because of the availability of other remedies, the Court finds that the proposed counterclaims are not so important as to weigh in favor of granting leave to amend.

Next, the Court finds that Plaintiffs would be prejudiced by allowing the proposed counterclaims at this stage of the litigation. Put simply, "as [Defendants] would assert a different cause of action, [Plaintiffs] would be required to conduct additional discovery" in aid of their defense. *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 536–37 (5th Cir. 2003). Defendants argue that this prejudice is minimal because the discovery already conducted in this matter overlaps with discovery that would be relevant to the proposed counterclaims. *See* Dkt. No. 87 at 5. Further, Defendants argue that because the "counterclaims are limited to NUSA's actions and do not include a request to join Nestlé Mexico or any Mexican wholesaler, the litigation of [the] counterclaims would not require extensive discovery." *Id.* But while Defendants may not believe they would need discovery from third parties or other Nestlé entities to pursue these claims, it is highly unlikely that Plaintiffs would not seek discovery from all the Mexican entities mentioned in the counterclaims. And as the parties agree, pursuing discovery from foreign entities can take significant time. *See* Dkt. No. 30 at 2, 5 (Plaintiffs suggest six months is sufficient time; Defendants suggest attaining foreign discovery could take up to eighteen months). Moreover, even if there is some overlap in the discovery relevant to Plaintiffs' claims and what would be relevant

8

to the counterclaims, Plaintiffs would certainly be entitled to targeted additional discovery to test Defendants' claims.[2] The Court finds that the third factor weighs against granting leave.

Finally, the parties disagree whether granting a continuance of the case deadlines would cure the prejudice to Plaintiffs from allowing the amendment. Plaintiffs suggest nothing would cure their prejudice because allowing the amendment would "greatly increase the expense and duration of the litigation." Dkt. No. 80 at 10. Plaintiffs further suggest that granting a continuance would exacerbate the prejudice from granting leave because the "significant delays" would "result in great harm to NUSA's business due to Defendants' continued unlawful distribution of grey market Nestlé" products. *Id.* Defendants respond that a continuance would cure any prejudice to Plaintiffs because the parties have jointly moved to modify the case schedule previously. *See* Dkt. No. 87; *see also* Dkt. No. 83 (joint motion to modify the case schedule). The Court will not credit Plaintiffs' claims of heightened prejudice premised on the subject matter of *this litigation*—Defendants' alleged illicit sales of Nestlé products. Those allegations remain to be proven. However, the Court agrees with Plaintiffs that the prejudice resulting from expanding the scope of this case and inviting additional protracted foreign discovery—likely significant delay and increased litigation costs—would not be cured by granting a continuance. *See Filgueira v. US Bank Nat'l Ass'n*, 734 F.3d 420, 423–24 (5th Cir. 2013) ("[A] continuance would not avoid the inevitable prejudice to the Defendants should [plaintiff] be allowed to amend" to add additional claims.). On the record before the Court, the fact that the parties have previously requested a continuance for other reasons is irrelevant. Accordingly, the Court finds this factor to weigh against granting leave to amend.

---

[2] Should Defendants file a separate cause of action, the Court trusts that the parties would work collaboratively to make use of any relevant discovery already conducted in this matter to avoid duplication of effort.

While the first factor weighs in Defendants' favor, the Court finds that the relative unimportance of the proposed amendment (because of the availability of other remedies) and the resulting prejudice to Plaintiffs weigh against a finding of good cause. Because the Court does not find good cause under Rule 16, it will not address the parties' arguments primarily made under Rule 15. *See S&W Enters.*, 315 F.3d at 536. Accordingly, the Court will deny the Motion for Leave.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Join (Dkt. No. 62) is **DENIED**.

It is **FURTHER ORDERED** that Plaintiffs shall publicly file confirmation that Ms. Donaldson has authority to bind Nestlé S.A. and re-file an unsealed copy of her declaration within **fourteen** days of the entry of this Order.

It is **FURTHER ORDERED** that Defendants' Motion for Leave (Dkt. No. 76) is **DENIED**.

It is **FURTHER ORDERED** that the Clerk of Court shall file this Order **UNDER SEAL** because of the parties' treatment of the briefing in this matter. However, the Court does not believe anything in this Order should remain under seal. Accordingly, within **seven** days of the entry of this Order, the parties shall either provide proposed redactions to this Order or advise that it may be filed publicly.

**IT IS SO ORDERED.**

**SIGNED** this _28_ day of January, 2022.

_____
ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE